[No. F047246. Fifth Dist. Dec. 20, 2005.]

E & J GALLO WINERY, Petitioner, v.
THE WORKERS' COMPENSATION APPEALS BOARD and DAVID
DYKES, Respondents.

1538

1540

**COUNSEL**

Harbinson Tune Kasselik, Thomas J. Harbinson, Lisa Erickson Kasselik and Susan I. Kagan for Petitioner.

Jones, Cochrane, Hollenback, Nelson & Zumwalt and Gary C. Nelson for Respondent David Dykes.

David J. Froba for California Applicants' Attorneys Association as Amicus Curiae on behalf of Respondent David Dykes.

Vincent Bausano for Respondent Workers' Compensation Appeals Board.

**OPINION**

**WISEMAN, J.**—In this opinion we must determine the appropriate method of apportioning liability between two workers' compensation injuries as conjured by the Legislature in reforming the workers' compensation laws by enacting Senate Bill No. 899 (2003–2004 Reg. Sess.). We conclude that where an employee sustains multiple disabling injuries while working for the same self-insured employer, the employee is entitled to compensation for the total disability above any percentage of permanent disability previously awarded. In this narrow context, we see no reason to treat an employee who has been injured twice differently from a similarly situated employee who is injured once with the same level of disability. Our conclusion benefits employers by ensuring there can be no double recovery for the same disability; it benefits the employee by providing equitable compensation under the exponentially progressive nature of the workers' compensation system. This approach best meets the legislative goal of bringing stability to what had become an unworkable statutory scheme.

### *FACTUAL HISTORY*

David Dykes injured his back while working as a winery worker for E & J Gallo Winery (Gallo) in September 1996. As a result of the injury, a workers' compensation administrative law judge (WCJ) approved a stipulated agreement on March 26, 1999, to provide Dykes with future medical care and a 20.5 percent permanent disability award worth $11,680 in compensation. Dykes returned to work with Gallo with a lighter duty and a medical restriction of lifting up to 50 pounds. By January 2002, his condition improved and his work restrictions were lifted.

On October 28, 2002, Dykes again injured his back while working for Gallo. Following a November 2004 workers' compensation hearing, a WCJ determined that Dykes was temporarily totally disabled between November 12, 2002 through March 25, 2004, when he became 73 percent permanently disabled. Adjusting for Dykes's age and occupation, a 73 percent disability award translated to a weekly $230 payment over 453.50 weeks for a total sum of $104,305. From the award, the WCJ subtracted the $11,680 in compensation previously paid to settle Dykes's 1996 back injury, as well as 12 percent in attorney fees. The WCJ also awarded Dykes future medical treatment as reasonably necessary to cure or relieve the injury. Gallo was permissibly self-insured for purposes of workers' compensation at the time of both injuries. (See Lab. Code,[1] § 3700; *Denny's Inc. v. Workers' Comp. Appeals Bd.* (2003) 104 Cal.App.4th 1433, 1439 [129 Cal.Rptr.2d 53].)

Gallo timely petitioned the Workers' Compensation Appeals Board (WCAB) for reconsideration, contending that the Labor Code mandated subtracting the percentage, not dollar amount, of the prior award from Dykes's disability award. The WCJ advised the WCAB in a report and recommendation by repeating her original analysis without addressing the calculation issue. On January 5, 2005, WCAB Commissioners Frank M. Brass, William K. O'Brien, and Janice Jamison Murray summarily denied reconsideration by adopting and incorporating the reasoning from the WCJ's report.

### *DISCUSSION*

The Legislature enacted Senate Bill No. 899 (2003–2004 Reg. Sess.) (Sen. Bill 899), effective April 19, 2004, as a comprehensive plan to reform the workers' compensation system. Among the reforms, the legislation amended

---

[1] Further statutory references are to the Labor Code.

the standards of "apportionment," the process of segregating " ' "the residuals of an industrial injury from those attributable to other industrial injuries, or to nonindustrial factors, in order to fairly allocate the legal responsibility." ' " (*Marsh v. Workers' Comp. Appeals Bd.* (2005) 130 Cal.App.4th 906, 911 [30 Cal.Rptr.3d 598].)

"Before the enactment of Sen. Bill 899, apportionment was 'concerned with the disability, not its cause or pathology.' " (*Marsh v. Workers' Comp. Appeals Bd., supra,* 130 Cal.App.4th at p. 912.) "Because the statutes focused on disability, an employer could be liable to the full extent an industrial injury accelerates, aggravates, or 'lights up' a nondisabling preexisting disease, condition, or physical impairment." (*Ibid.*)

Establishing new apportionment provisions for specific injuries, Sen. Bill 899 repealed sections 4663, 4750, and 4750.5 and enacted new sections 4663 and 4664. (Stats. 2004, ch. 34, §§ 33–35, 37–38.) Sections 4663 and 4750 applied to antecedent injuries, while section 4750.5 applied to subsequent injuries. (*Fresno Unified School Dist. v. Workers' Comp. Appeals Bd.* (2000) 84 Cal.App.4th 1295, 1305 [101 Cal.Rptr.2d 569].) Under the earlier section 4663, the aggravation of a preexisting disease or compensable injury was "allowed only for the proportion of the disability due to the aggravation of such prior disease which is reasonably attributed to the injury." Former section 4750 prevented an industrially injured employee suffering from a previous permanent disability or physical impairment from receiving a workers' compensation award greater than he or she would otherwise receive for the later injury alone and limited the employer's liability to only "that portion due to the later injury as though no prior disability or impairment had existed."

■ Now, apportionment is "based on causation" and the "employer shall only be liable for the percentage of permanent disability directly caused by the injury arising out of and occurring in the course of employment." (§§ 4663, subd. (a) & 4664, subd. (a).) "The plain reading of 'causation' in this context is causation *of the permanent disability.*" (*Escobedo v. Marshalls* (2005) 70 Cal.Comp.Cases 604, 611 (en banc), review den. Nov. 16, 2005, S137275.) Examining physicians therefore must "make an apportionment determination by finding what approximate percentage of the permanent disability was caused by the direct result of injury arising out of and occurring in the course of employment and what approximate percentage of the permanent disability was caused by other factors both before and subsequent to the industrial injury, including prior industrial injuries." (§ 4663, subd. (c).) The Legislature also added a new conclusive presumption

affecting the burden of proof that a prior permanent disability exists whenever an employee has received a prior permanent disability award. (§ 4664, subd. (b).) In short, Sen. Bill 899 provides for apportionment based on either nonindustrial factors sufficiently described by the medical evidence (§ 4663, subd. (c)) or as previously awarded to the employee under a prior workers' compensation claim (§ 4664, subd. (b)).

After a rocky transition period, it is now well settled that, consistent with the Legislature's intent, "the apportionment provisions of Sen. Bill 899 must be applied to all cases . . . not yet final at the time of the legislative enactment on April 19, 2004, regardless of the earlier dates of injury and any interim decisions." (*Marsh v. Workers' Comp. Appeals Bd., supra,* 130 Cal.App.4th at p. 910; see also *Rio Linda Union School Dist. v. Workers' Comp. Appeals Bd.* (2005) 131 Cal.App.4th 517, 531 [31 Cal.Rptr.3d 789] review den. Oct. 12, 2005, S137089; *Kleemann v. Workers' Comp. Appeals Bd.* (2005) 127 Cal.App.4th 274, 285–289 [25 Cal.Rptr.3d 448], review den. May 11, 2005, S132853.) Applying Sen. Bill 899's new apportionment provisions to Dykes's workers' compensation claim, the WCAB found apportionment was not warranted on any nonindustrial grounds (§ 4663, subd. (c)), but that his prior 1996 disability award must be taken into account (§ 4664, subd. (b)). The parties agree apportionment of the prior award is appropriate but disagree how to calculate the current award.

In petitioning us for review, Gallo contends that instead of subtracting the dollar amount of the 1999 award from the dollar amount of Dykes's current level of disability, as the WCAB did here, the WCAB should have reduced Dykes's current 73 percent level of permanent disability by the 20.5 percent level of permanent disability from the 1999 stipulated award. Gallo believes the "clear, unambiguous, and plain wording" of sections 4663 and 4664 requires that the "*percentage* of permanent disability previously awarded must be deducted to arrive at the *percentage* of permanent disability directly caused by the new injury."

## I.  *Standard of review*

As an appellate court, we review the application of legislation to undisputed facts de novo. (*Marsh v. Workers' Comp. Appeals Bd., supra,* 130 Cal.App.4th at p. 915.) We give great weight to the construction of the WCAB except where an interpretation contravenes the Legislature's intent as evidenced by clear and unambiguous statutory language. (*Honeywell v. Workers' Comp. Appeals Bd.* (2005) 35 Cal.4th 24, 34 [24 Cal.Rptr.3d 179, 105 P.3d 544].) We view a particular provision in the context of the entire

statutory scheme of which it is a part and harmonize it with the statutory framework as a whole. (*DuBois v. Workers' Comp. Appeals Bd.* (1993) 5 Cal.4th 382, 388 [20 Cal.Rptr.2d 523, 853 P.2d 978].) We must also consider the consequences that will flow from a particular statutory interpretation which, when applied, will result in wise policy rather than mischief or absurdity. (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387, 1392 [241 Cal.Rptr. 67, 743 P.2d 1323]; *California Ins. Guarantee Assn. v. Workers' Comp. Appeals Bd.* (2004) 117 Cal.App.4th 350, 355 [12 Cal.Rptr.3d 12].) Lastly, we adhere to the overriding principle that "all workers' compensation statutes are to be liberally construed in favor of the injured worker." (*Claxton v. Waters* (2004) 34 Cal.4th 367, 373 [18 Cal.Rptr.3d 246, 96 P.3d 496], citing § 3202.)

## II. Fuentes v. Workers' Compensation Appeals Board

In *Fuentes v. Workers' Comp. Appeals Bd.* (1976) 16 Cal.3d 1, 3 [128 Cal.Rptr. 673, 547 P.2d 449], the Supreme Court established under the former apportionment provisions "the appropriate method of determining the extent of an employer's liability for an employee's industrial injury resulting in permanent disability in those cases in which a portion of the over-all disability is attributable to a preexisting injury." *Fuentes* addressed a 1972 amendment to the permanent disability schedule under section 4658 changing the method of computing the number of weeks an employee was entitled to workers' compensation indemnity payments. Before April 1, 1972, each percentage point of an industrially related permanent disability entitled the injured worker to four weeks of compensation at the employee's applicable indemnity rate. (*Fuentes v. Workers' Comp. Appeals Bd., supra,* 16 Cal.3d at p. 4.) After the 1972 amendment, however, "the number of weekly benefits increases exponentially in proportion to the percentage of the disability."[2] (*Ibid.*) The Supreme Court explained that the new exponentially progressive workers' compensation system created a difficulty in apportioning out the nonindustrial portion of a disability and gave rise to three potential methods of computing the number of weekly benefits, which the Supreme Court named formulas A, B, and C. (*Id.* at p. 5.)

Under formula A, which Gallo contends the WCAB should have applied here and which was ultimately adopted by the Supreme Court in *Fuentes*, the

---

[2] For example, under the pre-1972 scheme, a 40 percent permanent disability compensated an employee for 160 weeks while an 80 percent permanent disability compensated an employee for exactly twice as long for 320 weeks. Under the revised exponentially proportional system, a 40 percent permanent disability compensated an employee over 180.75 weeks while an 80 percent permanent disability paid the employee over 461.25 weeks. (*Fuentes v. Workers' Comp. Appeals Bd., supra,* 16 Cal.3d at p. 4, citing former versions of § 4658.)

percentage of the nonindustrial permanent disability is subtracted from the percentage of the employee's overall level of total disability to determine the compensable level of permanent disability. The resulting percentage is then converted to a dollar amount under the compensation schedules set forth under section 4658. In the present case, this formula subtracts 20.5 percent of permanent disability attributable to Dykes's 1999 settled award from his current 73 percent permanent disability, resulting in a net 52.5 percent permanent disability. For Dykes, a 52.5 percent permanent disability warrants 286.25 weeks of benefits at $170 per week, for a total award of $48,662.50. (Formula A: 73 percent total disability – 20.5 percent prior disability = 52.5 percent apportioned disability = 286.25 weeks x $170 per week = $48,662.50 award.)

Formula B, rejected by *Fuentes*, examines the overall disability and then determines the number of weeks it should be paid. This formula first looks to the number of weeks in which benefits are statutorily authorized under section 4658 for the total level of current disability and multiplies that number of weeks by the percentage of the injury that was industrially related. Here, Dykes's 73 percent level of overall disability warrants 453.50 weeks of disability payments per the workers' compensation tables. About 72 percent of Dykes's present 73 percent permanent disability was caused by the recent injury while working for Gallo. ((73 percent – 20.5 percent) / 73 percent = 72 percent.) Formula B multiplies 453.50 weeks times 72 percent, resulting in approximately 326.25 weeks of $170 payments amounting to $55,462.50 in aggregate payments. (Formula B: 73 percent total disability = 453.50 weeks x 72 percent relative disability = 326.25 weeks x $170 per week = $55,462.50 award.)

■ Formula C, also rejected by *Fuentes*, is the method the WCAB applied in determining Dykes's award. This formula first determines the monetary value of the injured employee's overall permanent disability and subtracts the monetary value of the percentage of permanent disability from the noncompensable disability. Adopting the WCJ's reasoning, the WCAB here calculated that Dykes's current disability of 73 percent warranted 453.50 weeks of $230[3] weekly payments for an aggregate benefit of $104,305, and then subtracted the value of his 20.5 percent disability established under the 1999 settlement, $11,680, resulting in a $92,625 current award. (Formula C:

---

[3] The maximum weekly benefit payment increases from $170 to $230 for disabilities of at least 70 percent caused by injuries between July 1, 1996, and December 31, 2002. (§§ 4453 & 4658; see 1 Cal. Workers' Compensation Practice (Cont.Ed.Bar 4th ed. 2005) § 5.7A, p. 285.)

$104,305 value of total 73 percent disability – $11,680 value of prior 20.5 percent disability = $92,625 award.)

Dykes believes the WCJ appropriately applied formula C to his award under the Supreme Court's reasoning in *Fuentes*. In that case, the Supreme Court adopted formula A, and rejected formulas B and C, as "required by the express and unequivocal language of section 4750 . . . ." (*Fuentes v. Workers' Comp. Appeals Bd., supra,* 16 Cal.3d at p. 6.) Dykes argues that by repealing section 4750, the Legislature must have intended to compensate injured workers in an amount more closely related to the full extent of their disability without considering the former overriding policy of encouraging employers to hire an employee with a preexisting disability. Repealed by Sen. Bill 899, section 4750 previously provided:

"An employee who is suffering from a previous permanent disability or physical impairment and sustains permanent injury thereafter shall not receive from the employer compensation for the later injury in excess of the compensation allowed for such injury when considered by itself and not in conjunction with or in relation to the previous disability or impairment.

"The employer shall not be liable for compensation to such an employee for the combined disability, but only for that portion due to the later injury as though no prior disability or impairment had existed."

Examining the legislative intent of section 4750, the Supreme Court concluded:

"[T]he purpose of that statute is to encourage employers to hire physically handicapped persons. The Legislature recognized that employers might refrain from engaging the services of the handicapped if, upon subsequent injury, an employer was required to compensate the employee for an aggregate disability which included a previous injury. [Citations.] In enacting section 4750, the Legislature has expressed a clear intent that the liability of one who employs a previously disabled worker shall, in the event of a subsequent injury, be limited to that percentage of the over-all disability resulting from the later harm considered alone and as if it were the original injury." (*Fuentes v. Workers' Comp. Appeals Bd., supra,* 16 Cal.3d at p. 6.)

In *Fuentes*, the Supreme Court dismissed consideration of formulas B and C because they resulted in awards too closely aligned with the amount of compensation the employee would receive without apportioning the award. "This arithmetic leads to the inevitable conclusion that neither method B nor C can be reconciled with the mandate of section 4750 that the compensation for a subsequent injury be computed 'as though no prior disability or

impairment had existed.' " (*Fuentes v. Workers' Comp. Appeals Bd., supra,* 16 Cal.3d at p. 6.)

III.   Nabors v. Piedmont Lumber & Mill Company

After Gallo petitioned this court for review, the WCAB examined the appropriate method of calculating apportionment under Sen. Bill 899 in an en banc decision, *Nabors v. Piedmont Lumber & Mill Company* (2005) 70 Cal.Comp.Cases 856, review granted October 7, 2005, A110792. Four of six WCAB commissioners—including three from the panel who denied Gallo's petition for reconsideration—looked to new sections 4663, subdivision (c) and 4664, subdivision (a), which both provide for apportionment as a "percentage" of permanent disability. Carrying over the same Supreme Court public policy considerations set forth in *Fuentes,* despite section 4750's repeal, the majority concluded that formula A provided the most appropriate method of apportionment. Finding no evidence that the Legislature intended to change the formula endorsed by the Supreme Court in *Fuentes,* the WCAB majority reasoned that "part of the legislative intent in enacting new sections 4663 and 4664 was, as in enacting former section 4750, to encourage employers to hire disabled workers." (*Nabors v. Piedmont Lumber & Mill Company, supra,* 70 Cal.Comp.Cases at p. 862.)

Separately dissenting from the majority, however, then-Chairman Merle Rabine believes that the express language of Sen. Bill 899 requires the application of formula B while Commissioner Ronnie Caplane believes the same express language requires the application of formula C. Chairman Rabine suggests section 4663, subdivision (a)'s limitation on an employer's liability to the " 'percentage of permanent disability directly caused by the industrial injury' " is best carried out through formula B's ratio of the industrial injury to the overall disability, rather than formula A's subtraction of the nonindustrial or previously awarded disability from the overall percentage of permanent disability. (*Nabors v. Piedmont Lumber & Mill Company, supra,* 70 Cal.Comp.Cases at pp. 862–864 (dis. opn. of Commissioner Rabine).) He also points to the lack of any empirical evidence that formula A, over formulas B or C, has had any effect on the stated public policy of encouraging employers to hire the disabled over the nearly 30 years since *Fuentes.* (*Ibid.*) Meanwhile, Commissioner Caplane argues for adoption of formula C because the Legislature must have intended a change by amending the statutes. She also finds it is "manifestly unfair" under the progressive workers' compensation system to compensate an employee with apportioned multiple industrial injuries less than if the employee had suffered a single

industrial injury resulting in the same level of permanent disability. (*Id.* at pp. 864–865 (dis. opn. of Commissioner Caplane).)[4]

IV.   Fuentes *is not controlling after Sen. Bill 899*

We are unconvinced by the *Nabors* majority that the reasons for adopting formula A are as compelling today as in 1976 when the Supreme Court addressed the issue in *Fuentes*. *Fuentes* repeatedly states its holding was required by the express and unequivocal language of section 4750.[5] In fact, the Supreme Court went so far as to suggest that the repeal of section 4750 would create the opportunity to apply another apportionment formula. (*Fuentes v. Workers' Comp. Appeals Bd., supra,* 16 Cal.3d at pp. 6–7 ["The application of either formula B or C would require us to discern an intent on the part of the Legislature that the 1971 amendments to section 4658 function so as to effect a repeal or at least a partial repeal of section 4750"].) The Supreme Court refused, however, to infer a repeal of section 4750 because it could harmonize that provision with the newly enacted exponentially progressive system under section 4658.

A year after deciding *Fuentes*, the Supreme Court confirmed in *Wilkinson v. Workers' Comp. Appeals Bd.* (1977) 19 Cal.3d 491, 500 [138 Cal.Rptr. 696, 564 P.2d 848] that its adoption of formula A rested exclusively on section 4750: "*Fuentes* . . . interpreted section 4750 in such a way that the worker who incurs a single injury will usually receive greater benefits than one who

---

[4] It is odd that only Commissioner Caplane currently believes formula C is the proper approach to apportioning liability among multiple injuries because Commissioners Brass, O'Brien, and Murray agreed with her previously when they denied Gallo's petition for reconsideration and effectively affirmed the WCJ's calculations of Dykes's award based on the same formula. In a supplemental briefing request, we directed the WCAB to "explain why its reasoning subsequently set forth in *Nabors* was not applied to the present case." The WCAB responded by letter brief: "That the panel of commissioners assigned to this case, who are part of the majority in *Nabors*, did not, five months previously, follow the reasoning subsequently set forth in *Nabors* denotes not only the difficulty of resolving the specific issue here, as well as the myriad of issues that have arisen because of [Sen. Bill] 899, but also signifies the importance of the lengthy and multiple deliberations involved in the en banc process." While we agree the issue is complex and of great significance, the WCAB's reversal instills little confidence in Dykes's award.

[5] "In our view this result is required by the express and unequivocal language of section 4750 . . . ." (*Fuentes v. Workers' Comp. Appeals Bd., supra,* 16 Cal.3d at p. 6.) "[W]e conclude that only formula A results in an award complying with the provisions of section 4750." (*Ibid.*) "[N]either method B nor C can be reconciled with the mandate of section 4750 that the compensation for a subsequent injury be computed 'as though no prior disability or impairment had existed.'" (*Ibid.*) "By applying formula A we give effect, as we must, to the express and unambiguous language of section 4750." (*Id.* at p. 8.)

incurred successive injuries resulting in the same total disability. Our opinion in *Fuentes*, however, did not rest upon any broad proposition that awards based upon a combined disability rating are inequitable, but upon the narrower proposition that such awards contravene the language and policy of section 4750."

The Legislature has now repealed section 4750 and its replacement, section 4664, is notably distinct:

| Former § 4750 | New § 4664 |
|---|---|
| "An employee who is suffering from a previous permanent disability or physical impairment and sustains permanent injury thereafter shall not receive from the employer compensation for the later injury in excess of the compensation allowed for such injury when considered by itself and not in conjunction with or in relation to the previous disability or impairment.<br><br>"The employer shall not be liable for compensation to such an employee for the combined disability, but only for that portion due to the later injury as though no prior disability or impairment had existed." | "(a) The employer shall only be liable for the percentage of permanent disability directly caused by the injury arising out of and occurring in the course of employment.<br><br>"(b) If the applicant has received a prior award of permanent disability, it shall be conclusively presumed that the prior permanent disability exists at the time of any subsequent industrial injury. This presumption is a presumption affecting the burden of proof." |

While both former section 4750 and new section 4664 address the broad issue of apportioning liability between multiple injuries, they invoke significantly different approaches of achieving that same goal. Former section 4750 limited the employer's liability for the "injury when considered by itself and not in conjunction with or in relation to the previous disability or impairment" and only "for that portion due to the later injury as though no prior disability or impairment had existed." The Supreme Court's holding in *Fuentes* expressly rested on this language in section 4750 that the level of permanent disability caused by a subsequent injury was to be determined without reference to or consideration of the employee's prior condition. Sen. Bill 899 reversed that policy. Now, a prior award is conclusively presumed to exist as a means of establishing the level of permanent disability directly caused by the subsequent injury. (§ 4663, subd. (b).) Evaluating physicians must also make similar apportionment percentage determinations. (§ 4664, subd. (c).) The WCAB may no longer apportion liability without considering a prior or other noncompensable disability.

We are also not persuaded by the *Nabors* majority that the public policy of encouraging employers to hire the disabled dictates retaining *Fuentes*'s formula A in calculating apportionment between multiple injuries. Under Sen. Bill 899, apportionment of liability remains a central tenet to the workers' compensation system. (§§ 4663, 4664.) Because apportionment is now based on causation, and prior permanent disability awards are presumed to exist at the time of any subsequent injury, employers still have an incentive to hire the disabled under Sen. Bill 899. As Chairman Rabine noted in his *Nabors* dissent, there is no evidence in the record that any apportionment formula promotes hiring the disabled better than another. Further, the reliance on apportionment alone as a means of encouraging employers to hire the disabled is not as necessary today as when the Legislature first enacted section 4750. During the 30 years since *Fuentes*, disability discrimination has been expressly outlawed by other statutory schemes. (See, e.g., Americans with Disabilities Act of 1990 (42 U.S.C. § 12101 et seq.); California Fair Employment and Housing Act (Gov. Code, § 12900 et seq.); Prudence Kay Poppink Act (Stats. 2000, ch. 1049, § 1).) Moreover, employers can now avoid costly job displacement benefits of $4,000 to $10,000 by retaining workers who sustain work-related disabilities. (§ 4658.5.)

" 'When the Legislature deletes an express provision of a statute, it is presumed that it intended to effect a substantial change in the law.' " (*Lockheed Martin Corp. v. Workers' Comp. Appeals Bd.* (2002) 96 Cal.App.4th 1237, 1246 [117 Cal.Rptr.2d 865].) Even the WCAB has recently noted: "There is no doubt that, in repealing former section 4750 and in enacting new section 4664, the Legislature intended to change the law relating to apportionment of permanent disability." (*Sanchez v. County of Los Angeles* (2005) 70 Cal.Comp.Cases 1440, 1441 (en banc); *Strong v. City & County of San Francisco* (2005) 70 Cal.Comp.Cases 1460, 1469 (en banc); see also *Escobedo v. Marshalls, supra,* 70 Cal.Comp.Cases at p. 616.) Although the WCAB believes the Legislature did not intend a change in policy, we conclude the Legislature contemplated a variation in determining apportionment by repealing section 4750 and replacing it with different language in section 4664 for apportioning liability among multiple injuries.

V. *Applicable apportionment formula*

Having found that neither the statutory language nor legislative intent necessarily requires the continued application of formula A, we must now determine the meaning of the new apportionment provision that "[t]he employer shall only be liable for the percentage of permanent disability directly caused by the injury arising out of and occurring in the course of employment." (§ 4664, subd. (a).) We limit our analysis to the present facts

where the injured employee received a prior disability award while working for the same self-insured employer.

■ It is well established that we first look to the statutory language as the best evidence of the Legislature's intent. (*Burden v. Snowden* (1992) 2 Cal.4th 556, 562 [7 Cal.Rptr.2d 531, 828 P.2d 672].) The plain language of section 4664, subdivision (a), underscores its simplicity: An employer is liable for the direct consequences of a work-related injury, nothing more and nothing less. To determine the employer's liability, noncompensable disability is either based on medical evidence (§ 4663, subd. (c)) or conclusively presumed from a previous award (§ 4664, subd. (b)). Moreover, the "accumulation" of permanent disability awards to any one region of the body may not exceed 100 percent over the employee's life except under certain enumerated circumstances. (§ 4664, subd. (c).) As a result, section 4664 contemplates accumulating multiple disability awards rather than subtracting percentage levels of disability.

In *Fuentes*, the Supreme Court considered three options offered by the parties as potential formulaic approaches to apportioning liability. Since the Supreme Court decided *Fuentes*, however, the workers' compensation system has become even more progressive. (See fn. 3, *ante*.) Now, in addition to permanent disability tables providing for exponentially progressive higher number of weeks of payments, the maximum weekly benefit payments also increase at specific levels of permanent disability. Applicable during Dykes's injuries in September 1996 and October 2002, the maximum weekly benefit payment levels were as follows:

| Percent of Permanent Disability | Maximum Weekly Rate |
| --- | --- |
| 1 - 14.75 | $140 |
| 15 - 24.75 | $160 |
| 25 - 69.75 | $170 |
| 70 - 99.75 | $230 |

At the time of both of Dykes's injuries, a 20.5 percent level of disability translated to 73 weekly payments of $160 totaling $11,680; a 52.5 percent level of permanent disability warranted 286.25 weekly payments of $170 totaling $48,662.50; and a 73 percent level of permanent disability paid 453.50 weekly payments of $230 totaling $104,305. This expanded, exponentially progressive compensation system gives rise to another question not considered by the Supreme Court in *Fuentes*: Should the maximum weekly benefit rate be determined before or after apportionment? Taking into consideration the higher $230 maximum weekly benefit because Dykes is, per the medical evidence adopted by the WCAB, currently 73 percent disabled,

formulas A and B would result in awards of \$65,895 and \$75,037.50.[6] Under the current expanded, exponentially progressive nature of the workers' compensation tables, we can therefore extract at least five possible interpretations of calculating apportionment among multiple injuries—reaching final awards as varied as \$48,662.50, \$55,462.50, \$65,837.50, \$75,037.50, and \$92,625— all taking into account the same underlying facts that Dykes became 73 percent permanently disabled after having previously received a 20.5 percent disability award.

■ Determining the appropriate approach to calculating an apportioned award is further complicated by section 4659, which authorizes a life pension of 1.5 percent of the employee's average weekly earnings for each percent of disability over 60 percent once the permanent disability award payments cease if "the permanent disability is at least 70 percent, but less than 100 percent . . . ." Section 4659 is silent with respect to whether the 70-percent-level-of-permanent-disability trigger applies before or after apportionment. If the pension is applied to Dykes's full 73 percent level of permanent disability, it would entitle him to \$50.25 per week for life once his regular weekly permanent disability payments ended.[7] Dykes and amicus curiae California Applicants' Attorneys Association believe Dykes will automatically receive such a life pension under the current award because the WCJ determined that his actual level of disability was 73 percent and only the monetary value of the prior 20.5 percent award was apportioned out of the award. Gallo and the WCAB, however, contend that Dykes is not entitled to the life pension because his level of disability, after apportionment, is only 52.5 percent.

In adopting Sen. Bill 899, the Legislature did not outline any particular method for apportioning either a permanent disability award or a life pension. We are, however, guided by the specific legislative mandate that "[t]he employer shall only be liable for the percentage of permanent disability directly caused by the injury arising out of and occurring in the course of employment." (§ 4664, subd. (a).) We are also guided by the overriding principle that workers' compensation laws "shall be liberally construed by the courts with the purpose of extending their benefits for the protection of persons injured in the course of their employment." (§ 3202.) We keep firmly

---

[6] Variation of formula A: 73 percent total disability − 20.5 percent prior disability = 52.5 percent apportioned disability = 286.25 weeks x \$230 (instead of \$170) per week = \$65,837.50.

Variation of formula B: 73 percent total disability = 453.50 weeks x 72 percent relative disability = 326.25 weeks x \$230 (instead of \$170) per week = \$75,037.50.

[7] Gallo and the WCAB declined our invitation to demonstrate how this figure would be calculated for Dykes, assuming a 73 percent level of disability. We therefore adopt as correct the \$50.25 calculation offered by Dykes and amicus curiae California Applicants' Attorneys Association.

in mind the exponentially progressive nature of the workers' compensation disability tables, the increasing maximum weekly benefit rates, and the lifetime pension for disabilities over 70 percent—all of which serve to compensate employees with higher levels of permanent disability in greater proportion to those with lower levels of permanent disability. In doing so, we conclude that only formula C ensures both that an employee is adequately compensated and that an employer is directly liable for the percentage of disability directly caused by the injury arising out of employment. We therefore agree with Commissioner Caplane, at least where an employee sustains multiple industrial injuries while working for the same self-insured employer, that apportionment under Sen. Bill 899 requires that "an employer is liable for that portion of a worker's overall disability, which exceeds his or her prior level of disability." (*Nabors v. Piedmont Lumber & Mill Company, supra,* 70 Cal.Comp.Cases at p. 865 (dis. opn. of Commissioner Caplane).) Given the facts before us, we express no opinion whether formula C should also be applied where an employee received a prior disability award with another employer, where the employer was separately insured at the time of the injuries, or where the medical evidence reveals that a portion of the injured employee's disability is not compensable.

We adopt formula C here because we can ascertain no legislative intent to compensate an employee who has sustained two or more disabling injuries while employed by the same self-insured employer less than a similarly situated employee who has sustained a single industrial injury resulting in the same level of permanent disability. By not recognizing the injured employee's total disability and artificially shifting compensation down on the permanent disability tables, all of the other formulas shortchange an employee by treating him or her as though no prior injury or disability existed, which is now no longer permitted under Sen. Bill 899. The other formulas also preclude an employee who previously received a disability award from ever being deemed 100 percent totally disabled. Moreover, any other algebraic formulation of apportioning liability between multiple injuries creates a windfall to the employer and places an unreasonable burden on the injured employee who must compete in the open labor market with a permanent disability. This is especially applicable where the employee worked for the same self-insured employer at the time of both injuries; Gallo cannot reasonably argue that it is not liable to the full extent of Dykes's 73 percent disability, whether the result of one or multiple industrial injuries. Dykes's employment with Gallo directly caused him to become 73 percent disabled, and section 4750 no longer directs the WCAB to consider the new injury "by itself and not in conjunction with or in relation to the previous disability or impairment" and "as though no prior disability or impairment had existed."

Under the *Nabors* majority, the WCAB would award Dykes an apportioned award of $48,662.50 without a life pension to supplement his prior $11,680

award for a total of $60,342.50 in compensation. Yet if Dykes had sustained a single injury in 2002 causing the same total level of disability, he would have received an award of $104,305 plus a $50.25 per week life pension. We do not believe the Legislature intended such a discrepancy between single and multiple injured employees when it prescribed that the "employer shall only be liable for the percentage of permanent disability directly caused by the injury . . . ." (§ 4664, subd. (a).) As Commissioner Caplane explained, "Although the workers' compensation system is not designed to make injured workers whole, it should compensate workers fairly and equitably within its strictures." (*Nabors v. Piedmont Lumber & Mill Company, supra,* 70 Cal.Comp.Cases at p. 865 (dis. opn. of Commissioner Caplane).)

Gallo believes the application of any formula other than formula A, which compensates an employee at the lowest possible level, overcompensates employees and creates a disincentive to hire disabled workers. We disagree. Before the Legislature adopted Sen. Bill 899, apportionment was based on disability and never on pathology or causation. (*Franklin v. Workers' Comp. Appeals Bd.* (1978) 79 Cal.App.3d 224 [145 Cal.Rptr. 22], superseded by Sen. Bill 899 as stated in *Kleemann v. Workers' Comp. Appeals Bd., supra,* 127 Cal.App.4th at pp. 284–285, fn. 26.) An employee could therefore become rehabilitated over time, preventing any apportionment of the award. Here, the WCJ noted that Dykes testified uncontrovertibly that after the 1996 injury, but before the 2002 injury, "His condition got better in January 2002 and his restrictions were lifted." In issuing Dykes's award, the WCJ cited nothing in the medical record indicating Dykes was, in fact, disabled at the time of the subsequent injury. Apportionment under the prior workers' compensation scheme therefore would not have been supported by substantial evidence and Dykes would have received a full $104,305 award, plus a life pension, *in addition* to $11,680 from the 1996 injury. Conclusively presuming the prior disability awarded in 1999 existed at the time of a subsequent injury, Sen. Bill 899 now protects employers from paying employees more than once for the same disability.

■ Dykes was conclusively presumed under section 4664, subdivision (b), to be 20.5 percent permanently disabled per his 1999 disability settlement at the time of his subsequent industrial injury in 2002. His 2002 injury directly caused him to become 73 percent permanently disabled. Taking his prior level of disability into account, as required by section 4664, subdivision (a), the "percentage of permanent disability directly caused by the injury arising out of and occurring in the course of employment" is the additional percentage of disability that takes him from 20.5 percent to 73 percent disabled. Dykes is therefore entitled to the difference between a 20.5 percent disability and a 73 percent disability on the permanent disability table applicable for the subsequent injury. By adopting the WCJ's findings, the WCAB correctly determined that Dykes's subsequent injury caused him to

sustain 73 percent permanent disability, payable at $230 per week for a total of $104,350, less credit for the prior 20.5 percent disability award in the amount of $11,680. While the WCAB did not expressly award a life pension, we conclude the pension was imposed as a matter of law under section 4659 because Dykes's subsequent injury directly caused him to become 73 percent disabled.

## *DISPOSITION*

The WCAB's order denying reconsideration is affirmed. Costs are awarded to David Dykes, but his request for attorney fees under section 5801 is denied as there was a reasonable basis for the petition.

Vartabedian, Acting P. J., and Gomes, J., concurred.

Petitioner's petition for review by the Supreme Court was denied March 1, 2006, S140645. Kennard, J., and Werdegar, J., were of the opinion that the petition should be granted.