[No. A110792. First Dist., Div. Two. June 8, 2006.]

DANNY NABORS, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD, PIEDMONT
LUMBER CO. et al., Respondents.

## Counsel

Law Offices of Fowler & Ball and Robert A. Fowler for Petitioner.

David J. Froba for California Applicants' Attorneys Association as Amicus Curiae on behalf of Petitioner.

Robert W. Daneri, Suzanne Ah-Tye, Alan Russell Canfield and Charles Flores for Respondents State Compensation Insurance Fund and Piedmont Lumber Co.

Finnegan, Marks, Hampton & Theofel and Ellen Sims Langille for California Workers' Compensation Institute as Amicus Curiae on behalf of Respondents Piedmont Lumber Co. and State Compensation Insurance Fund.

Sedgwick, Detert, Moran & Arnold, Christina J. Imre and Orly Degani for California Chamber of Commerce as Amicus Curiae on behalf of Respondents Piedmont Lumber Co. and State Compensation Insurance Fund.

No appearance for Respondent Workers' Compensation Appeals Board.

OPINION

**KLINE, P. J.—**

## INTRODUCTION

Danny Nabors petitions for review of the opinion and decision after reconsideration of the Workers' Compensation Appeals Board (Board), which affirmed the award of a workers' compensation judge (WCJ). Nabors challenges the Board's permanent disability apportionment formula.

## BACKGROUND

In May 1996, Nabors sustained industrial injury to his low back and lower extremities while employed by Piedmont Lumber Co. as a foreman, lumber stacker and forklift driver, resulting in an August 2001 stipulated award of $42,476 based on 49 percent permanent disability. Thereafter, while working for Piedmont as a mill supervisor, he sustained injury to the same body parts cumulative to August 19, 2002. After a hearing, the WCJ found the cumulative injury caused 31 percent of Nabors's permanent disability and awarded him $22,610. The Board granted Nabors's petition for reconsideration, and affirmed the award in an en banc opinion and decision. This timely writ petition followed.

## DISCUSSION

In his opinion on decision, the WCJ explained that in apportioning disability between Nabors's two industrial injuries, he followed the rationale of *Fuentes v. Workers' Comp. Appeals Bd.* (1976) 16 Cal.3d 1 [128 Cal.Rptr. 673, 547 P.2d 449] (*Fuentes*), and the plain meaning of Labor Code section 4664.[1]

In *Fuentes*, our Supreme Court considered the extent of an employer's liability for a worker's permanent disability that was attributable to both an industrial and a preexisting injury, under then-recent amendments to section 4658 (the permanent disability schedule), which changed the method for calculating compensation from four weeks of benefits for each percentage point of permanent disability to a formula in which the number of weekly benefits increases exponentially in proportion to the percentage of disability. (*Fuentes, supra,* 16 Cal.3d at pp. 3–4.) The court set out three computational formulas and concluded the Board had properly applied formula A, subtracting from the total percentage of disability the portion that was nonindustrial.

---

[1] Unless otherwise indicated, all further statutory references are to the Labor Code.

The court believed that although that approach deprived the injured worker of amended section 4658's exponential increase in benefits,[2] it was required by former section 4750.[3] (16 Cal.3d at p. 6.) Since that time, section 4750 has been repealed and section 4664 has been added. (Stats. 2004, ch. 34, §§ 35 & 37.) Section 4664 provides, in pertinent part, "(a) The employer shall only be liable [*sic*] for the *percentage of permanent disability directly caused* by the injury arising out of and occurring in the course of employment. [¶] (b) If the applicant has received a prior award of permanent disability, it shall be conclusively presumed that the prior permanent disability exists at the time of any subsequent industrial injury. This presumption is a presumption affecting the burden of proof." (Italics added.)[4]

The majority of the Board agreed with the WCJ that absent clear indication the Legislature had abandoned its intention to encourage employment of the disabled, repeal of section 4750 did not entirely undermine *Fuentes*'s rationale, especially in light of new section 4664 and amended section 4663, subdivision (c) (Stats. 2004, ch. 34, § 34 [physician apportioning permanent disability must determine "approximate percentage" caused by industrial injury and "approximate percentage" caused by other factors]), both of which speak in terms of "percentage of permanent disability," and the public policy underlying the new statutes: "to provide relief to the state from the effects of the current workers' compensation crisis" (Stats. 2004, ch. 34, § 49).

Then-Board Chairman Rabine dissented on the grounds that repeal of former section 4750 removed the underpinnings of *Fuentes*, and the express language of section 4663 requires application of formula B (*Fuentes, supra*, 16 Cal.3d at p. 5): number of weekly benefits authorized by section 4658 for total permanent disability (80 percent) multiplied by percentage of total

---

[2] In this case, for example, the benefits for 49 percent permanent disability ($42,476) plus the benefits for 31 percent permanent disability ($22,610) (see *ante*, p. 220) add up to appreciably less than the benefits for Nabors's total current permanent disability of 80 percent ($118,795).

[3] Former section 4750, whose purpose was "to encourage employers to hire physically handicapped persons" (*Fuentes, supra*, 16 Cal.3d at p. 6), then provided in its entirety, "An employee who is suffering from a previous permanent disability or physical impairment and sustains permanent injury thereafter shall not receive from the employer compensation for the later injury in excess of the compensation allowed for such injury *when considered by itself* and not in conjunction with or in relation to the previous disability or impairment. [¶] The employer shall not be liable for compensation to such an employee for the combined disability, but only for that portion due to the later injury *as though no prior disability or impairment had existed.*" (Italics added.)

[4] Although it does not directly affect this case, we note an apparent logical inconsistency in this subdivision. "A presumption is either conclusive or rebuttable. Every rebuttable presumption is either (a) a presumption affecting the burden of producing evidence or (b) a presumption affecting the burden of proof." (Evid. Code, § 601; see also Evid. Code, §§ 605 & 606.) It is hard to see, therefore, how a conclusive presumption could affect the burden of proof.

permanent disability attributable to current injury (31/80). Rabine noted the absence of evidence that application of formula A for almost 30 years has, in fact, encouraged employment of the handicapped. In his analysis, "percentage of permanent disability" refers not to the degree to which a particular injury diminishes a worker's capacity to compete for employment in the open market (here, 31 percent), but to the ratio of the disability caused by the current injury to the total disability (31/80).

While agreeing with Rabine that repeal of section 4750 undercut the continuing validity of the *Fuentes* court's holding, dissenting Commissioner Caplane disagreed about the effect of the new statutes, believing the express language of sections 4663 and 4664 requires application of formula C (*Fuentes, supra*, 16 Cal.3d at p. 5): dollar value of previous award ($42,476) subtracted from dollar value of total current permanent disability ($118,795) (see *ante*, fn. 2), because unlike repealed section 4750, the new statutes do not include the limiting language italicized in footnote 3, *ante*, and formula C furthers the purpose of section 4658's exponential increases. Not surprisingly, Nabors asks us to reject the Board's majority opinion, and adopt that of Commissioner Caplane.

■ While this petition was pending before us, the Fifth District Court of Appeal issued an opinion in *E & J Gallo Winery v. Workers' Comp. Appeals Bd.* (2005) 134 Cal.App.4th 1536 [37 Cal.Rptr.3d 208] (*Dykes*) in which, after an exhaustive analysis (see *post*, pt. A), the court held that "where an employee sustains multiple disabling injuries while working for the same self-insured employer, the employee is entitled to compensation for the total disability above any percentage of permanent disability previously awarded." (*Id.* at p. 1540.) In other words, it adopted the formula C method of computing benefits. (*Id.* at p. 1553.) We requested letter briefs from the parties (including amicus curiae California Applicants' Attorneys Association) on the issue of *Dykes*'s effect on this case. In addition to their responses, we received amicus curiae briefs from the California Workers' Compensation Institute (CWCI) and the California Chamber of Commerce (CCC), to which the parties had an opportunity to respond (Cal. Rules of Court, rule 13(c)). For the reasons set out *post*, nothing in this additional briefing persuades us to diverge from the reasoning and result in *Dykes*.

### A. The *Dykes* Opinion[5]

Winery worker David Dykes sustained an industrial back injury in 1996, resulting in an award based on 20.5 percent permanent disability. In 2002, he became 73 percent permanently disabled after a second industrial back injury. The WCJ awarded Dykes benefits based on 73 percent permanent disability, less the amount of compensation previously awarded for the earlier injury. In other words, the WCJ computed the amount of the award using *Fuentes*'s formula C. Gallo, Dykes's self-insured employer, petitioned for reconsideration, which was summarily denied. (*Dykes, supra*, 134 Cal.App.4th at p. 1541.) Gallo petitioned for review, urging the application of formula A. (*Id.* at pp. 1543, 1554.)

After surveying the applicable statutes (*Dykes, supra*, 134 Cal.App.4th at pp. 1541–1543), the *Fuentes* opinion (*Dykes*, at pp. 1544–1547), and the en banc decision in *Nabors* (*Dykes*, at pp. 1547–1548; see *ante*, fn. 5), the court concluded *Fuentes* was no longer controlling after Senate Bill No. 899 (2003–2004 Reg. Sess.) (*Dykes*, at p. 1548). First, the court noted that the *Fuentes* court repeatedly stated its holding was required by the express and unequivocal language of former section 4750, going so far as to suggest that repeal of that section would create the opportunity to apply another apportionment formula, and a year later, in *Wilkinson v. Workers' Comp. Appeals Bd.* (1977) 19 Cal.3d 491, 500 [138 Cal.Rptr. 696, 564 P.2d 848] (*Wilkinson*), confirmed that its adoption of formula A rested exclusively on former section 4750. (*Dykes*, at pp. 1548–1549.) Next, the court pointed out the "significantly different approaches" to apportionment between former section 4750 (current injury considered by itself as if no prior disability existed) and new section 4664 (conclusive presumption that prior disability still exists). (*Dykes*, at p. 1549.) Finally, the court rejected the *Nabors* en banc majority's conclusion that the policy of encouraging employers to hire the disabled dictates the use of formula A, noting the new legislation's presumption that prior disability exists, the lack of evidence that any apportionment formula promotes hiring the disabled better than another, and the numerous antidiscrimination statutes enacted since *Fuentes*. (*Id.* at p. 1550.) In sum, the court concluded that "the

---

[5] In order to understand the analysis in *Dykes* and its relationship to this case, it is helpful to keep in mind the intertwined procedural histories of the two cases. Dykes obtained his original award in November 2004 (*Dykes, supra*, 134 Cal.App.3d at p. 1541); Nabors obtained his the following month. In January 2005, a Board panel denied Gallo's petition for reconsideration in *Dykes* (*ibid.*), and Gallo petitioned for writ of review. While that petition was pending in the Fifth District Court of Appeal, the Board granted Nabors's petition for reconsideration (March 2005) and issued its en banc decision after reconsideration (June 2005). Nabors petitioned this court for writ of review in July 2005, which we granted in October. In December, while this petition was pending, the Fifth District filed its opinion in *Dykes*.

Legislature contemplated a variation in determining apportionment by repealing section 4750 and replacing it with different language in section 4664 for apportioning liability among multiple injuries." (*Ibid.*)

■ Turning its attention to the meaning of the new apportionment provision, the court concluded the plain language of section 4664, subdivision (a) (*ante*, p. 221) means that "[a]n employer is liable for the direct consequences of a work-related injury, nothing more and nothing less." (*Dykes, supra*, 134 Cal.App.4th at p. 1551.) Furthermore, "section 4664 contemplates accumulating multiple disability awards rather than subtracting percentage levels of disability." (*Ibid.*)[6] But the court noted that while the new statutes, in conjunction with the permanent disability schedule (see *ante*, p. 221) and the life pension provision,[7] may be interpreted to permit several different approaches to apportioning liability, yielding quite disparate results, the Legislature did not specify any particular method of calculating an award. (*Dykes*, at pp. 1551–1552.)

■ Guided by the specific legislative mandate of section 4664, subdivision (a), as well as the overriding principle of liberal construction of workers' compensation laws for the benefit of injured workers (§ 3202), and mindful of the exponentially progressive nature of the permanent disability tables, which serve to compensate employees with higher levels of permanent disability "in greater proportion" to those with lower levels, the court concluded that only formula C ensures both that an employee is adequately compensated and that an employer is liable only for the percentage of disability directly caused by the current injury. In other words, an employer is liable for that part of a worker's overall disability that exceeds his prior disability level. (*Dykes, supra*, 134 Cal.App.4th at pp. 1552–1553.)

The *Dykes* court could "ascertain no legislative intent to compensate an employee who has sustained two or more disabling injuries while employed by the same self-insured employer less than a similarly situated employee who has sustained a single industrial injury resulting in the same level of permanent disability. By not recognizing the injured employee's total disability[,] and artificially shifting compensation down on the permanent disability tables, all of the other formulas shortchange an employee by treating him or her as though no prior injury or disability existed, which is . . . no longer

---

[6] "The accumulation of all permanent disability awards issued with respect to any one region of the body in favor of one individual employee shall not exceed 100 percent over the employee's lifetime" except under certain enumerated circumstances. (§ 4664, subd. (c)(1).)

[7] "If the permanent disability is at least 70 percent, but less than 100 percent, 1.5 percent of the average weekly earnings for each 1 percent of disability in excess of 60 percent is to be paid during the remainder of life, after payment for the maximum number of weeks specified in Section 4658 has been made." (§ 4659, subd. (a).)

permitted under Sen[ate] Bill [No.] 899." (*Dykes, supra,* 134 Cal.App.4th at p. 1553.) Moreover, any other formula for apportionment among multiple injuries "creates a windfall to the employer and places an unreasonable burden on the injured employee who must compete in the open labor market with a permanent disability." (*Ibid.*) Finally, the court pointed out that under the old law, evidence that Dykes had been rehabilitated from his prior injury would have defeated any apportionment at all, rendering Gallo liable for an award based on 73 percent permanent disability, in addition to the benefits already paid for the earlier injury. (*Id.* at p. 1554.) Under present law, taking his prior level of disability into account, as required by section 4664, subdivision (a), the "percentage of permanent disability directly caused by" the current industrial injury is the additional percentage of disability that takes him from 20.5 percent to 73 percent disabled. Dykes was therefore entitled to an award reflecting the difference between a 20.5 percent disability and a 73 percent disability on the permanent disability table applicable to the subsequent injury. (134 Cal.App.4th at p. 1554.)

### B. A Distinction Without a Difference

The *Dykes* court expressly limited its analysis to the "narrow context" (*Dykes, supra,* 134 Cal.App.4th at p. 1540) in which "the injured employee received a prior disability award while working for the same self-insured employer." (*Id.* at pp. 1550–1551.) In this case, the employer was not self-insured, but had a different carrier for each of Nabors's injuries. While every party pointed out this factual distinction, only the employer's current carrier, respondent State Compensation Insurance Fund (SCIF), suggested that the distinction is sufficient to render *Dykes* inapplicable to this case. But even SCIF did not actually *argue* for that position. It simply noted, "A critical question that arises in the multiple carrier situation that is absent in the *Dykes* situation is whether the current carrier should be saddled with having to pay increased indemnity due to the earlier injury by operation of the graduated permanent disability scale." SCIF does not answer this "critical question," nor point to any other context in which this distinction affects the amount of benefits to which an injured worker is entitled.

In our view, the *Dykes* court's limiting language merely expresses its adherence to the principle of judicial restraint. The practice of distinguishing one case from another is based, after all, on the assumption that the holding of an appellate court is limited to the facts of the case before it. The *Dykes* court did not say that its holding does not or should not apply to a case in which the employer is not self-insured. In fact, it "express[ed] no opinion whether formula C should also be applied where an employee received a prior disability award with another employer, where the employer was separately insured at the time of the injuries, or where the medical evidence

reveals that a portion of the injured employee's disability is not compensable." (*Dykes, supra,* 134 Cal.App.4th at p. 1553.)

We are not persuaded that *Dykes* is inapplicable to this case simply because the employer here was insured by two different carriers rather than being self-insured.

## C. The *Dykes* Rationale

In addition to the requested briefing on the issue of *Dykes*'s applicability to the instant case, we received and have considered various arguments that *Dykes* itself was wrongly decided. "We acknowledge we are not bound by an opinion of another District Court of Appeal, however persuasive it might be. [Citation.] We respect stare decisis, however, which serves the important goal of stability in the law and predictability of decision. Thus, we ordinarily follow the decisions of other districts without good reason to disagree. [Citation.]" (*Greyhound Lines, Inc. v. County of Santa Clara* (1986) 187 Cal.App.3d 480, 485 [231 Cal.Rptr. 702].) Although the *Dykes* case is the only reported decision to date on this issue, no compelling reason has been advanced, on the facts of this case, to disagree with it.

Both respondents and amici curiae CWCI and CCC have asked us to reject the reasoning of *Dykes*. Much of their briefing consists of an historical overview of workers' compensation apportionment law, as they see it. They all include reference to the Subsequent Injuries Benefits Trust Fund (§§ 4751–4755), which provides additional compensation to injured employees with prior disabilities under certain specific circumstances. Since none of those circumstances is present in this case, the issue of whether there might ever be any inconsistency between formula C and the subsequent injuries fund is not before us.

Much of the argument against *Dykes* is based on section 4664's use of the term "percentage of permanent disability," language CWCI claims "codifies" the formula chosen by the *Fuentes* court, and prohibits the formula chosen by the *Dykes* court. The issue is not, however, whether to employ what CWCI calls "the percentage principle," but rather what the Legislature *meant* by "percentage of permanent disability"—how to calculate benefits on this basis—especially in light of section 4658's exponentially progressive benefits schedule. For that reason, the verbal sleight of hand by which CCC labels formula A "the percentage method" and formula C "the dollar value method" is of no avail. Formula A and formula C are alternate methods of calculating benefits based on the *percentage* of total disability caused by each of two successive injuries. (See *Dykes, supra,* 134 Cal.App.4th at p. 1554.) The

*Dykes* court focused its inquiry on which formula best reflects the Legislature's intent, not, as CCC suggests, on its own notion of "fairness," a word that does not even appear on the cited page of the opinion (*id.* at p. 1553).

CWCI also asserts that to the extent the 2004 workers' compensation reform changed the apportionment rules, it was intended to overturn not *Fuentes,* but *Wilkinson, supra,* 19 Cal.3d 491, in which the court held that its decision in *Fuentes* had not impliedly overruled the doctrine established in *Bauer v. County of Los Angeles* (1969) 34 Cal.Comp.Cases 594, that "whenever a worker, while working for the same employer, sustains successive injuries to the same part of his body and these injuries become permanent at the same time, the worker is entitled to an award based on the combined disability" (*Wilkinson, supra,* 19 Cal.3d at p. 494). The court reasoned that in such a case, *Fuentes* did not apply because there was no "previous permanent disability" within the meaning of former section 4750. (*Wilkinson,* at pp. 497, 500.) Neither *Dykes* nor this case concerns injuries that became permanent and stationary at the same time, but CWCI argues that in the past 30 years, courts have expanded what it calls the *Wilkinson* exception until it has swallowed the rule of *Fuentes,* requiring reform of the apportionment statutes to overrule *Wilkinson* and reinstate *Fuentes.* Without going into the details of its tortured argument, suffice it to say that CWCI has failed to demonstrate either the truth of its premise—that *Wilkinson* and its progeny "swallowed" *Fuentes*—or the logic of its conclusion—that the Legislature repealed section 4750 in order to "purge" cases that did not rely upon it, and "reinforce" the one that did.

CWCI further contends that any compensation calculation other than formula A violates the antimerger laws, i.e., sections 3208.1 (distinguishing between specific and cumulative injuries), 3208.2 (when disability results from combined effect of two or more injuries, questions of fact and law are separately determined) and 5303 (one cause of action for each injury). But as CWCI acknowledges, the antimerger statutes were enacted to prevent the defeat of statutes of limitation by the merger of specific into cumulative injuries. (*Western Growers Ins. Co. v. Workers' Comp. Appeals Bd.* (1993) 16 Cal.App.4th 227, 236–237 [20 Cal.Rptr.2d 26].) Those statutes have no application to the apportionment of disability at issue in the present case. (See *Wilkinson, supra,* 19 Cal.3d at pp. 501–502, fn. 5.)

Amici curiae also assert that the policy of encouraging employers to hire and retain disabled employees survived repeal of section 4750, but the *Dykes* court did not imply otherwise. On the contrary, as previously indicated (*ante,* p. 223), it expressly considered and rejected the notion that under current law that policy mandates the use of formula A.

Both respondents and CCC advance arguments based on hypotheticals. Respondents posit a case in which "formula C [is] taken to its logical extreme" (worker hired with 99 percent disability becomes 100 percent disabled by injury not statutorily presumed totally disabling (§ 4662)), while CCC sets out a "scenario" (50 percent disability in 1991 followed by 2006 injury resulting in a total of 99 percent disability) in which application of formula C would cost the employer's carrier considerably more than formula A. Even assuming the calculations to be correct and based on all relevant facts and realistic probabilities (a premise disputed by the California Applicants' Attorneys Association), anomalies at the extremes do not undermine the rationale of *Dykes* to the extent that they result not from the use of formula C, but from section 4658's exponentially progressive permanent disability schedule. In any event, we express no opinion about whether formula C should be applied in such cases, but like the *Dykes* court, exercise appropriate restraint by limiting our inquiry to the proper formula for calculating the benefits due under the facts of that case (having been asked to reject its reasoning) and this one.

■ Finally, CWCI points out that en banc Board decisions are generally entitled to great weight (*Judson Steel Corp. v. Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 658, 668 [150 Cal.Rptr. 250, 586 P.2d 564]). In this case, however, the majority view in a seriously splintered Board decision has been expressly rejected in a well-reasoned published appellate court opinion. (See *Hoechst Celanese Corp. v. Franchise Tax Bd.* (2001) 25 Cal.4th 508, 524 [106 Cal.Rptr.2d 548, 22 P.3d 324] [amount of deference owed to administrative construction depends on several factors including validity of reasoning and consistency with later pronouncements].)

## D. Conclusion

■ Since none of the parties or their amici curiae have shown either that the *Dykes* analysis is inapplicable to this case, or that *Dykes* itself was wrongly decided, we hold that formula C is the correct method of calculating Nabors's permanent disability benefits. Furthermore, since Nabors's subsequent injury directly caused him to become 80 percent permanently disabled, a life pension was imposed as a matter of law under section 4659, subdivision (a). (*Dykes, supra*, 134 Cal.App.4th at p. 1555.)

## DISPOSITION

The Board's opinion and decision after reconsideration is annulled, and the matter returned to the Board with directions to reverse the WCJ's order and recalculate the amount of Nabors's permanent disability benefits in accordance with this opinion.

Lambden, J., and Richman, J., concurred.

The petition of respondent State Compensation Insurance Fund for review by the Supreme Court was denied August 23, 2006, S145097. Corrigan, J., did not participate therein.