51 Cal.Rptr.3d 605 (2006)
145 Cal.App.4th 324
Fortunata Mary DAVIS, Petitioner,
v.
WORKERS' COMPENSATION APPEALS BOARD and Allied Security et al., Respondents.
Moises Torres, Petitioner,
v.
Workers' Compensation Appeals Board and Williams Tank Lines et al., Respondents.
Nos. H029544, H029834.
Court of Appeal of California, Sixth District.
November 30, 2006.
*607 Russell D. Jacobson, San Jose, Butts & Johnson, for Petitioner, Fortunata Mary Davis.
Michael P. Holmes, San Diego, Laughlin, Falbo, Levy & Moresi, for Respondent, Allied Security.
David J. Froba, for Amicus Curiae for Petitioner, California Applicants' Attorney Association.
Leah D. Davis, Office of the County Counsel, for Amicus Curiae for Respondent, County of Los Angeles.
Jim Gonzalez, The Law Offices of Jim Gonzalez, for Petitioner, Moises Torres.
Marshall G. Candee, San Jose, Law Offices of Marshall Candee, for Respondent, Williams Tank Lines.
*606 PREMO, Acting P.J.

I. Introduction
The question in these workers' compensation cases is whether the Legislature's 2004 overhaul of the workers' compensation statutes (Stats. 2004 (2003-2004 Reg. Sess.) ch. 34, p. 142 et seq.) was intended to alter the formula used to calculate a permanent disability award when the employee's overall disability is subject to apportionment. We conclude that, notwithstanding the recent changes to the law, the calculation adopted by Fuentes v. Workers' Comp. Appeals Bd. (1976) 16 Cal.3d 1, 128 Cal.Rptr. 673, 547 P.2d 449 (Fuentes) continues to be appropriate. In so concluding we disagree with E & J Gallo Winery v. Workers' Comp. Appeals Bd. (Dykes) (2005) 134 Cal.App.4th 1536, 37 Cal. Rptr.3d 208 (Dykes) (Fifth Dist.) and Nabors v. Workers' Comp. Appeals Bd. (2006) 140 Cal.App.4th 217, 44 Cal.Rptr.3d 312 (Nabors) (First Dist., Div. Two).[1]

II. Factual and Procedural Background
The facts may be briefly stated. In the first case (case No. H029544), petitioner Fortunata Mary Davis suffered a work-related back injury that left her 100 percent permanently disabled. Davis had suffered a prior work-related injury for which she received an award for permanent partial disability of 35 percent. Using the formula prescribed by the Supreme Court in Fuentes, the Workers' Compensation Administrative Law Judge (WCJ) deducted the 35 percent disability from the overall disability of 100 percent and awarded Davis compensation for permanent partial disability of 65 percent, which was $65,662.50. Davis petitioned the Workers' Compensation Appeals Board (WCAB) for reconsideration arguing that the WCJ should have used the formula later approved by the appellate court in Dykes, supra, 134 Cal.App.4th 1536, 37 Cal. Rptr.3d 208. The Dykes formula would have given her the full benefit allowed for 100 percent disability less credit to her employer for the dollar value of the prior award. This calculation would have resulted in payments of approximately $420,649.21 over Davis's remaining life expectancy.
In the second case (case No. H029834), petitioner Moises Torres injured his back and his knees while working for respondent Williams Tank Lines, leaving him with an overall disability rating of 52 percent. He had previously received an award for permanent partial disability of *608 24 percent as the result of a spinal injury. The WCJ applied the Fuentes calculation, which gave Torres a permanent partial disability-award of $16,277.50.[2] Torres also petitioned the WCAB for reconsideration, urging it to use the alternative calculation, which would have resulted in an award of $31,360.
In denying the petitions the WCAB followed the en banc decision in Nabors v. Piedmont Lumber & Mill Co. (2005) 70 Cal.Comp.Cases 856, which held that the Fuentes formula had not been affected by the 2004 changes to the apportionment statutes. Dykes, supra, 134 Cal.App.4th 1536, 37 Cal.Rptr.3d 208 later overruled Nabors v. Piedmont and shortly thereafter Nabors v. Piedmont was reversed by Nabors, supra, 140 Cal.App.4th 217, 44 Cal. Rptr.3d 312. We issued writs of review in the present cases and ordered the two cases considered together for purposes of oral argument and decision.

III. Issue
Thirty years ago, Fuentes set forth the formula to use when calculating permanent disability compensation in cases where the current disability is subject to apportionment for a preexisting disability. (Fuentes, supra, 16 Cal.3d 1, 128 Cal.Rptr. 673, 547 P.2d 449.) Under Auto Equity Sales, Inc. v. Superior Court (1962) 57 Cal.2d 450, 455, 20 Cal.Rptr. 321, 369 P.2d 937, we are bound to follow the decisions of the Supreme Court unless they are overruled, altered by statute, or can be validly distinguished. We cannot rely upon cases decided under prior law to interpret a quite different code section. (People v. Valentine (1946) 28 Cal.2d 121, 144,169 P.2d 1.) On the other hand, when the Legislature enacts a statute, we presume that the Legislature did not intend to overthrow long-established principles of law unless such an intention is clearly expressed or necessarily implied. (People v. Superior Court (Zamudio) (2000) 23 Cal.4th 183, 199, 96 Cal.Rptr.2d 463, 999 P.2d 686; see also Fuentes, supra, 16 Cal.3d at p. 7, 128 Cal.Rptr. 673, 547 P.2d 449; Theodor v. Superior Court (1972) 8 Cal.3d 77, 92, 104 Cal.Rptr. 226, 501 P.2d 234.) Unless the Legislature plainly intends to change a judicial result based upon an earlier version of a statute we are bound by the prior judicial result. (People v. Eastman (1993) 13 Cal.App.4th 668, 676, 16 Cal.Rptr.2d 608.)
The statutory basis for the Fuentes holding was former Labor Code section 4750.[3] Although the Legislature repealed former section 4750 in 2004, it also repealed two related sections pertaining to apportionment and "recast" the substance of all three provisions in new sections 4663 and 4664. (Stats.2004, ch. 34, supra, at p. 146.) The question before us, therefore, is whether these changes demonstrate that the Legislature clearly intended to alter the Fuentes rule. We begin by comparing the former law with the new sections pertaining to apportionment.[4]

IV. Prior Law

A Apportionment
In workers' compensation jargon, when permanent disability benefits are reduced *609 based upon permissible factors, the employee's overall disability is said to be "apportioned to" those factors. (See, e.g., Callahan v. Workers' Comp. Appeals Bd. (1978) 85 Cal.App.3d 621, 631, 149 Cal. Rptr. 6470 "`Apportionment is the process employed by the [WCAB] to segregate the residuals of an industrial injury from those attributable to other industrial injuries, or to nonindustrial factors, in order to fairly allocate the legal responsibility.' " (Fresno Unified School Dist. v. Workers' Comp. Appeals Bd. (2000) 84 Cal. App.4th 1295, 1304, 101 Cal.Rptr.2d 569, (Fresno) brackets in original, quoting Ashley v. Workers' Comp. Appeals Bd. (1995) 37 Cal.App.4th 320, 326, 43 Cal. Rptr.2d 589.) Whether or not apportionment is appropriate in a given case is a question of fact. It is the employer's burden to establish the right to apportionment. (Fresno, supra, 84 Cal.App.4th at p. 1304,101 Cal.Rptr.2d 569.)
Under former law apportionment focused upon the disability. "It is disability resulting from, rather than the cause of, a disease which is the proper subject of apportionment; `pathology' may not be apportioned." (Pullman Kellogg v. Workers' Comp. Appeals Bd. (1980) 26 Cal.3d 450, 454, 161 Cal.Rptr. 783, 605 P.2d 422.) Former sections 4663, 4750, and 4750.5 set forth the rules for apportionment. The general rule was "`that an employer takes the employee as he finds him at the time of employment and when subsequent injury lightens up or aggravates a previously existing condition rendering it disabling, liability for `the full disability without proration is imposed upon the employer.' (Colonial Ins. Co. v. Industrial Acc. Com. (1946) 29 Cal.2d 79, 83-84, 172 P.2d 884.)" (Zemke v. Workmen's Comp.App. Bd. (1968) 68 Cal.2d 794, 796, 69 Cal.Rptr. 88, 441 P.2d 928.) An employer was entitled to apportionment only if the "`normal progress'" of the preexisting condition would have resulted in the disability in the absence of the industrial injury. (Ibid.; and see former § 4663.) Apportionment was required, however, if the permanent disability was "caused solely by [a] subsequent noncompensable injury." (Former § 4750.5.)
Apportionment was also required where an actual disability preexisted the industrial injury. (Edson v. Industrial Acc. Com. (1928) 206 Cal. 134, 139, 273 P. 572.) Former section 4750 provided that an injured employee suffering from an existing disability or physical impairment could not be compensated based upon the "combined disability, but only for that portion due to the later injury as though no prior disability or impairment had existed." Apportionment depended upon the actual existence of the prior disability at the time of the second injury. A previous award for partial permanent disability did not necessarily require apportionment. An employee could become completely rehabilitated before suffering a new disabling injury and in such a case the employer would not be entitled to apportionment for the prior disability. (Robinson v. Workers' Comp. Appeals Bd. (1981) 114 Cal.App.3d 593, 602, 171 Cal.Rptr. 48.)

B. Fuentes
Where a permanent disability is apportioned to a preexisting disability one may calculate the dollar amount due for the compensable portion in different ways. Prior to 1972 it did not matter which way one calculated it, the result would be the same because the compensation schedule progressed arithmetically; a permanently disabled employee was entitled to four weeks of benefits for every percentage point of permanent disability that was of industrial origin. (Fuentes, supra, 16 Cal.3d at p. 4, 128 Cal.Rptr. 673, 547 P.2d 449 citing former § 4658.)
*610 In 1971, the Legislature changed the compensation schedules for permanent disability to make compensation increase exponentially with the severity of the disability. (Fuentes, supra, 16 Cal.3d at p. 4, 128 Cal.Rptr. 673, 547 P.2d 449.) For example, although 40 is two times 20, the compensation allowed for a percentage of permanent disability of 40 percent is more than two times the compensation allowed for a disability of 20 percent. (See § 4658.) This type of schedule poses a problem when calculating compensation in cases where only a portion of the overall disability is compensable; different methods of calculation yield different results. Fuentes considered the question of how to calculate compensation for a permanent disability in light of the revised compensation scheme. Fuentes discussed three methods, which it designated as formula A, formula B, and formula C.[5] (Fuentes, supra, 16 Cal.3d at p. 5, 128 Cal.Rptr. 673, 547 P.2d 449.)
With formula A one begins with the overall percentage of permanent disability and subtracts the noncompensable percentage of permanent disability. Thus, in Fuentes the noncompensable percentage of permanent disability (24.25 percent) would be deducted from the overall percentage (58 percent) for a net compensable percentage of permanent disability of 33.75. An employee whose percentage of permanent disability was 33.75 was entitled to an award of $10,027.50. (Fuentes, supra, 16 Cal.3d at p. 5, 128 Cal.Rptr. 673, 547 P.2d 449.)
Formula C begins by converting the overall percentage of permanent disability into its monetary equivalent and subtracting from that the monetary equivalent of the percentage of permanent disability that is noncompensable. In the Fuentes example a percentage of permanent disability of 58 corresponded to an award of $20,790. $20,790 less the dollar value of the noncompensable portion would have left the employee with $14,367.50, significantly more than he would have received under formula A. (Fuentes, supra, 16 Cal.3d at p. 5,128 Cal.Rptr. 673, 547 P.2d 449.)
Formula B yields a result in between the results of the other two formulas. With formula B one first determines the number of weeks of benefits authorized for the overall disability. The total number of weeks is then multiplied by the percentage of the disability that is industrially related. In Fuentes that would have meant an award of $12,127.50. (Fuentes, supra, 16 Cal.3d at p. 5, 128 Cal.Rptr. 673, 547 P.2d 449.)
Fuentes decided that formula A was the appropriate formula even though the employee would recover more under either of the other two formulas. Fuentes concluded that the "express and unequivocal language" of former section 4750 compelled the conclusion that formula A was the appropriate method. (Fuentes, supra, 16 Cal.3d at p. 6, 128 Cal.Rptr. 673, 547 P.2d 449.) The plain language of former section 4750 prohibited the employee from receiving compensation for a subsequent injury "in excess of the compensation allowed for such injury when considered by itself" and limited the employer's liability to "that portion due to the later injury as though no prior disability or impairment had existed." (Italics added.) The employee's level of disability, considered by itself, without reference to the preexisting disability, was 33.75 percent of total. Using either formula B or formula C would give the employee more than the amount specified *611 for that level 01 disability considered by itself.'" "This arithmetic leads to the inevitable conclusion that neither method B nor C can be reconciled with the mandate of [former] section 4750 that the compensation for a subsequent injury be computed `as though no prior disability or impairment had existed.'" (Fuentes, supra, 16 Cal.3d at p. 6, 128 Cal.Rptr. 673, 547 P.2d 449.)
Fuentes concluded that notwithstanding section 3202, which provides that the workers' compensation statutes shall be "`liberally construed'" in favor of injured employees, "the policy underlying section 3202 cannot supplant the intent of the Legislature as expressed in a particular statute." (Fuentes, supra, 16 Cal.3d at p. 8, 128 Cal.Rptr. 673, 547 P.2d 449.) The legislative intent of former section 4750 was to encourage employers to hire or retain persons with physical disabilities. "The Legislature recognized that employers might refrain from engaging the services of the handicapped if, upon subsequent injury, an employer was required to compensate the employee for an aggregate disability which included a previous injury." (Fuentes, supra, 16 Cal.3d at p. 6, 128 Cal.Rptr. 673, 547 P.2d 449.) Only formula A was consistent with this legislative intent in that it did not require the employer to provide more compensation than would have been called for if the employee had not suffered the prior impairment.
A year after Fuentes was decided the Supreme Court confirmed that Fuentes's interpretation of former section 4750 rested upon the "narrow proposition" that awards based upon a combined disability rating "contravene the language and policy of [former] section 4750." (Wilkinson v. Workers' Comp. Appeals Bd. (1977) 19 Cal.3d 491, 500, 138 Cal.Rptr. 696, 564 P.2d 848.) Where it applied, fuentes has provided the rule for the last 30 years.

V. Current Law

A. Senate Bill 899
SB 899 (Stats.2004, ch. 34, supra, p. 142 et seq.) made broad substantive and procedural changes to the existing workers' compensation system. Among other things SB 899 repealed former sections 4750, 4750.5, and 4663 and replaced them with new sections 4663 and 4664. (Stats. 2004, ch. 34, supra, §§ 33-35, 37-38, pp. 182-184.) These changes were expressly intended to "repeal and recast" existing law with respect to apportionment of permanent disability. (Stats.2004, ch. 34, supra, at p. 146.)
We have set out the former law and the two new code sections side by side in the appendix. As shown by that table, the Legislature has completely rewritten the law. Where former law allowed apportionment in only three circumstances (former §§ 4463, 4750, 4750.5), new section 4663, subdivision (a) now simply states: "Apportionment of permanent disability shall be based on causation." A physician must "make an apportionment determination by finding what approximate percentage of the permanent disability was caused by the direct result of [industrial] injury ... and what approximate percentage of the permanent disability was caused by other factors both before and subsequent to the industrial injury, including prior industrial injuries ...."(§ 4663, subd. (c).) An employer is liable only for "the percentage of permanent disability directly caused by the [industrial] injury." (§ 4664, subd. (a).) Where an injured employee has received a prior permanent disability award, it is conclusively presumed that the prior level of disability existed at the time of any subsequent injury. (Id., subd. *612 (b).)[6] "The accumulation of all permanent disability awards issued with respect to any one region of the body" may not exceed 100 percent over the employee's lifetime unless the employee is deemed totally disabled. (Id., subd. (c).)
The WCAB has concluded that by permitting apportionment to "`other factors both before and subsequent to the industrial injury'" the Legislature has enlarged the range of factors to which permanent disability may be apportioned. (Escobedo v. Marshalls (2005) 70 Cal.Comp.Cases 604, 617.) The "other factors" now subject to apportionment would presumably include all disabilities that were apportionable prior to SB 899 as well as "pathology, asymptomatic prior conditions, and retroactive prophylactic work preclusions, provided there is substantial medical evidence establishing that these other factors have caused permanent disability." (Ibid) The conclusive presumption of section 4664, subdivision (b) means that even if an employee is completely rehabilitated following an injury for which he or she received a permanent disability award, the employer is nevertheless entitled to apportionment based upon the prior disability. (Sanchez v. County of Los Angeles (2005) 70 Cal. Comp.Cases 1440,1452.)

B. The Dykes Decision
Dykes concluded that, in light of SB 899, Fuentes was no longer controlling. (Dykes, supra, 134 Cal.App.4th at p. 1548, 37 Cal.Rptr.3d 208.) Dykes held that where an employee sustains multiple disabling industrial injuries "the employee is entitled to compensation for the total disability above any percentage of permanent disability previously awarded. (Id. at p. 1540, 37 Cal.Rptr.3d 208; see also Nabors, supra, 140 Cal.App.4th 217, 44 Cal.Rptr.3d 312 following Dykes.) That is, Dykes found formula C to be the appropriate formula. Although Dykes expressly limited its holding to the case where the multiple injuries were suffered while working for the same self-insured employer (Dykes, supra, 134 Cal.App.4th at p. 1540, 37 Cal. Rptr.3d 208), Nabors applied the Dykes rationale in a broader context. (Nabors, supra, 140 Cal.App.4th at pp. 225-226, 44 Cal.Rptr.3d 312.)

VI. Discussion

A. Standard of Review
In order to decide whether the Legislature clearly intended to alter the rule of Fuentes we must interpret the pertinent provisions of SB 899. Interpreting the law is a core judicial function (McClung v. Employment Development Dept. (2004) 34 Cal.4th 467, 470, 20 Cal. Rptr.3d 428, 99 P.3d 1015) to which we apply the independent standard of review (Scott v. CIBA Vision Corp. (1995) 38 Cal. App.4th 307, 313, 44 Cal.Rptr.2d 902). We review the law keeping in mind the well-settled rules of statutory construction. Our fundamental goal is to ascertain the intent of the Legislature so as to effectuate the purpose of the law. In determining such intent, we first look to the words of the statute, giving the language its usual, ordinary meaning. (Dyna-Med, Inc. v. Fair Employment & Housing Com. (1987) 43 Cal.3d 1379, 1386-1387, 241 Cal.Rptr. 67, 743 P.2d 1323.) The specific provision *613 should be construed in context so that the various elements of the overall scheme are harmonized. (Merrill v. Department of Motor Vehicles (1969) 71 Cal.2d 907, 918, 80 Cal.Rptr. 89, 458 P.2d 33.) Where uncertainty exists, consideration should be given to the consequences that will flow from a particular interpretation. Both the legislative history and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent. (Ibid.) Statutes are to be interpreted by assuming that the Legislature was aware of the existing law at the time of the enactment. (People v. McGuire (1993) 14 Cal.App.4th 687, 694, 18 Cal. Rptr.2d 12.) Lastly, in the workers' compensation context, statutes are to be liberally construed in favor of the injured worker. (§ 3202.)

B. The Plain Language of Sections 4663 and 4664
Like the old law, sections 4663 and 4664 contain no express instruction about how to calculate the apportioned award. We conclude, however, that such an instruction is implied by the plain language of section 4664.
Section 4664, subdivision (a) states that the employer shall only be liable for the "percentage of permanent disability" directly caused by the work-related injury. "Percentage of permanent disability" is the phrase used in section 4658 to describe the level of permanent disability for which a specified number of benefit weeks may be paid. (See, e.g., § 4658, subd. (a)(1), setting forth the number of benefit weeks allowed for each range of "percentage of permanent disability" incurred.) "Where the same word [or phrase] is used in more than one place in a legislative enactment, we presume the same meaning was intended in each instance." (Castro v. Sacramento County Fire Protection Dist. (1996) 47 Cal.App.4th 927, 932, 55 Cal. Rptr.2d 193.) Thus, we presume that when the Legislature stated that an employer's liability is limited to a "percentage of permanent disability" the Legislature was referring to the measure used to calculate the weekly benefit under section 4658. Formula A is the only calculation that yields a result in terms of a "percentage of permanent disability." That is, with formula A one subtracts the preexisting percentage of permanent disability from the overall percentage of disability to determine the compensable percentage of permanent disability. One then simply consults the compensation schedule to determine the weekly benefit that corresponds to the calculated percentage of permanent disability. Under formula C, where one calculates the benefit by converting the percentage of permanent disability to its dollar value the result of the calculation is not a percentage of permanent disability but is a dollar amount. With formula B, the result is stated as a number of weeks. Thus, formula A is the only calculation that gives effect to the plain language of section 4664, subdivision (a), which states that the employer "shall only be liable for the percentage of permanent disability" directly caused by the injury.
Davis seems to argue that the phrase "percentage of permanent disability," as used in section 4664, does not mean the same thing as it means in section 4658. She claims that in section 4664 the phrase refers to the percentage that takes the employee from the preexisting disability level to the resulting level. Davis points out that if we must conclusively presume that a prior permanent disability exists (§ 4664, subd. (b)), it cannot exist and "then go down to zero," which, she argues, is the effect of using formula A. The result in Dykes was reached with similar reasoning.
*614 Dykes is largely based upon two factors. The first factor is the Legislature's repeal of section 4750, which stated that an employer shall not be liable for a "combined disability, but only for that portion due to the later injury as though no prior disability or impairment had existed." (§ 4750, italics added.) Dykes concluded that repeal of section 4750 shows that the Legislature intended to overturn Fuentes since Fuentes cited the section's express language as support for its choice of formula A. (Fuentes, supra, 16 Cal.3d at p. 6, 128 Cal.Rptr. 673, 547 P.2d 449.) The second factor is the enactment of the directive in section 4664, subdivision (b), stating that if an applicant received a prior disability award, the disability must be conclusively presumed to exist at the time of the subsequent injury. Dykes concluded that the combined effect of these changes is that under current law the compensation calculation must take into account the preexisting disability. (Dykes, supra, 134 Cal. App.4th at p. 1554, 37 Cal.Rptr.3d 208.)
We do not view the Legislature's elimination of the language contained in section 4750 as necessarily rejecting the Fuentes rule. The Legislature did not simply repeal this section; it took the law as it existed under former sections 4750, 4750.5, and 4663 and recast it to reflect a new way of looking at apportionment. Where former section 4750 was concerned with preventing liability for a "combined disability," the new law excludes from liability all causes of the employee's overall disability other than the industrial injury under consideration. The new law is plainly intended to protect the employer from paying for that portion of a disability that is not the direct result of the industrial injury. Fuentes was concerned with the same issue. But in light of the change to causation based apportionment, the new law could not import the language of section 4750 verbatim. It would be ambiguous and possibly inaccurate to instruct the WCAB to compensate the employee for the injury "considered by itself." And since the revised law requires the WCAB to presume that a previously compensated industrial disability still exists at the time of a subsequent injury, including the phrase "as though no prior disability or impairment had existed" would make the entire scheme ambiguous. Instead, section 4664, subdivision (a) now states that the employer "shall only be liable for the percentage of permanent disability directly caused by" the industrial injury. In our view, the new language, like former section 4750, continues to reflect the bedrock principle that "industry is to be charged only for those injuries arising out of and in the course of employment and only for the result of that particular injury when considered by itself and not in conjunction with or in relation to a previous injury." (Gardner v. Industrial Acc. Com. (1938) 28 Cal.App.2d 682, 684, 83 P.2d 295.)
Furthermore, we are not convinced that section 4664, subdivision (b), which states that "it shall be conclusively presumed that the prior permanent disability exists at the time of any subsequent industrial injury," reflects a legislative intent to grant a twice-injured employee the enhanced benefit allowed for more serious injuries. If the prior disability exists, the more recent industrial injury cannot have caused that disability. Therefore, the employee's present disability must be apportioned to the prior disability, provided, of course, that the two overlap. (Sanchez v. County of Los Angeles, supra, 70 Cal. Comp.Cases at p. 1452.) If there is no overlap, the present disability will presumably be rated separately.[7] Thus, the presumption *615 that a prior disability exists at the time of the second injury does not relate to the calculation question at all; it merely prevents an employee from recovering a second time for a previously compensated "permanent" disability.
Dykes was also impressed by the provision stating that "accumulation of all permanent disability awards ... shall not exceed 100 percent ...." (§ 4664, subd. (c)(1).) According to the Dykes court this means that the new law "contemplates accumulating multiple disability awards rather than subtracting percentage levels of disability." (Dykes, supra, 134 Cal. App.4th at p. 1551, 37 Cal.Rptr.3d 208.) But, again, we do not believe this subdivision relates to the manner of calculating the award. Since independent disabilities are examined and rated separately, it was possible under prior law for an employee's total disability to exceed 100 percent if the separate disabilities were entirely unrelated. (Fresno, supra, 84 Cal.App.4th at p. 1310, fn. 3, 101 Cal.Rptr.2d 569.) The potential for accumulating awards of more than 100 percent for the same region of the body was eliminated by section 4664, subdivision (c)(1). The fact that the law presumes that some employees will "accumulate" more than one award for permanent disability does not, in our view, bear upon the calculation of the award.
We conclude that the plain language of sections 4663 and 4664 reflects the legislative intent to retain the rule of Fuentes. We recognize, however, that the two code sections do not clearly subscribe to the rule. Accordingly, we turn to the legislative history for additional insight.

C. Legislative History of SB 899
SB 899 became effective on April 19, 2004, as urgency legislation. The bill states: "In order to provide relief to the state from the effects of the current workers' compensation crisis at the earliest possible time, it is necessary for this act to take effect immediately." (Stats.2004, ch. 34, supra, § 49 at p. 189.) The crisis to which the bill referred concerned the escalating costs of the workers' compensation system. Prior to the passage of SB 899, California had the highest workers' compensation insurance premium rates in the country. (RAND Institute for Civil Justice, "An Evaluation of California's Permanent Disability Rating System" (2005) ch. 1., p. 2.) The average benefits paid for permanent partial disability was also higher in California than in any other state. (Ibid.)
In a memorandum to all the members of the Legislature the California Chamber of Commerce urged passage of SB 899 stating, "Workers' compensation costs for employers have skyrocketed 136% over the past four years, on average, driving jobs and employers to move to other states, scale back operations, lay off employees or simply close their doors. The Legislature must pass this package immediately to speed savings to employers." (Cal. Chamber of Commerce, Floor Alert re: SB 899, Apr. 15, 2004.)[8] One *616 partisan analysis urged support for the bill because: "[SB 899][e]nacts a series of medical, permanent disability, and apportionment reforms that could result in lower workers' compensation costs and premiums over the next several years and thereby preserve jobs for hard-working Californians." (Assem. Rep. Bill Analysis, Ins. Com. SB 899, Apr. 15, 2004, p. 1.) Among the "probable cost savers" listed in the analysis was the provision "[strengthening apportionment determinations." (Id. at p. 7.)
It is beyond question that SB 899 was intended, overall, to reduce workers' compensation costs for California employers. Formula A was the calculation in use long before SB 899 was passed. Either formula B or formula C would result in much larger awards than awards calculated under formula A. Thus, either of the alternative formulas would increase the cost of workers' compensation coverage. That being so, it is inconceivable that the Legislature intended to abandon formula A in favor of either alternate formula because to do so would be so inconsistent with the goal of SB 899.

D. The Policy of Hiring and Retaining Disabled Workers
In repealing former section 4750 the Legislature eliminated the language that Fuentes cited as supporting its choice of formula A. However, elimination of the language did not necessarily eliminate the legislative policy reflected in the language. The asserted policy basis for former section 4750 was the desire to encourage hiring and retention of disabled persons. Fuentes chose formula A because it did not charge the employer for a "combined disability." The other formulas would have made the employer liable, to some extent, for the combined disability, which would be a disincentive to hiring or retaining persons with existing disabilities. There is nothing in the new law to suggest that the Legislature has retreated from this policy. To the contrary, SB 899 added a provision to section 4658 that further encourages the retention of disabled workers by discounting all remaining disability payments by 15 percent if the employer offers work to the injured employee. (§ 4658, subd. (d)(3)(A).)
Furthermore, SB 899 did not affect other Labor Code sections designed to encourage the employment of disabled persons. Section 4750 was only the first section of the article pertaining to subsequent injuries. The remaining sections in that article provide additional benefits under specified circumstances when an employee with a prior disability suffers a subsequent workplace injury. These sections provide compensation "for the remainder of the combined permanent disability existing after the last injury" (§ 4751)[9] less the amount of all benefits *617 received by the employee on account of the preexisting disability (§ 4753). The payments come from the Subsequent Injuries Benefits Trust Fund (SIF), a state supervised trust funded by surcharges imposed upon employers in proportion to their payrolls. (§§ 62.5, subds.(d), (e), 4751 et seq.) Thus, for the most serious injuries, the SIF allows the employee to obtain compensation commensurate with his or her overall disability without making the employer liable for more than the amount due for the most recent industrial injury. The purpose of this provision, like former section 4750, is to encourage hiring and retention of disabled workers. (State of California v. Ind. Acc. Com. (1957) 147 Cal.App.2d 818, 822, 306 P.2d 64, disapproved on other grounds by Subsequent Injuries Fund v. Industrial Acc. Com. (1961) 56 Cal.2d 842, 846, 17 Cal. Rptr. 144, 366 P.2d 496.)
The continued existence of the SIF reflects the Legislature's ongoing interest in promoting the employment of disabled persons. It also demonstrates the illogic of adopting formula C. As amicus curiae County of Los Angeles has argued, adoption of formula C would effectively eliminate the purpose of the SIF. If formula C were used to calculate compensation, the employee would have no need to file a claim with the SIF. Indeed, since the SIF requires that benefits be reduced by the amount of collateral benefits received from other sources, the employee would have no incentive to seek payments from the SIF since formula C would provide roughly the same compensation undiminished by collateral benefits. The employer would continue to pay the regular surcharge into the SIF but would obtain no advantage from the payment since the employee could look directly to the employer for compensation for the combined disability.
The Dykes court was not convinced that the reason for adopting formula A is as compelling today as it was in 1976 when the Supreme Court addressed the issue in Fuentes. Dykes also questioned whether formula A promotes the hiring of disabled persons any better than another formula would. (Dykes, supra, 134 Cal.App.4th at p. 1550, 37 Cal.Rptr.3d 208.) And as amicus curiae California Applicants' Attorneys Association (CAAA) argues, we do not know whether the use of formula A has actually encouraged hiring the disabled nor do we know what percentage of employees ever suffer subsequent injuries. These observations are beside the point. We think it hardly debatable that the prospect of enhanced future liability would be a significant disincentive to hiring anyone. Both formula B and formula C present that possibility in that they would make the employer liable, to some extent, for the preexisting disability.
Recognizing that the Legislature continues to subscribe to a policy of encouraging employment of disabled persons, Dykes stated: "Because apportionment is now based on causation and prior permanent disability awards are presumed to exist at the time of any subsequent injury, employers still have an incentive to hire the disabled under Sen. Bill 899." (Dykes, supra, 134 Cal.App.4th at p. 1550, 37 Cal.Rptr.3d 208.) We cannot see how sections 4663 and 4664 would provide such an incentive unless the award was calculated using formula A.

E. The Rule of Liberality and Fairness
In his petition for review Torres focuses upon the issues of fairness and section 3202, which requires us to liberally construe *618 the provisions of the Labor Code in favor of injured workers. Davis stresses the significant difference between an award for 65 percent disability and what she would receive had she suffered 100 percent disability as the result of a single industrial injury. CAAA points out that use of formula A deprives an employee of the increasingly progressive nature of the compensation tables and argues that there is no indication that the Legislature was intent upon "cutting" benefits to injured employees. And Dykes rejected formula A because the court could "ascertain no legislative intent" to compensate an employee who has sustained two or more disabling injuries "less than a similarly situated employee who has sustained a single industrial injury resulting in the same level of permanent disability." (Dykes, supra, 134 Cal.App.4th at p. 1553, 37 Cal.Rptr.3d 208.) These concerns do not change the fact that the Legislature has not clearly expressed or necessarily implied an intention to alter the rule of Fuentes and abandon the use of formula A. (See Fuentes, supra, 16 Cal.3d at p. 7, 128 Cal.Rptr. 673, 547 P.2d 449.) Indeed, Fuentes rejected the same concerns. Fuentes recognized that under formula A, "a worker who suffers a single injury resulting in, for example, a disability rating of 50 percent, will receive greater benefits than one who sustains two successive injuries each of which causes a permanent disability of 25 percent when considered alone. This result, however, is neither unjust nor unfair, petitioner's arguments to the contrary notwithstanding. Rather, it is a consequence of the recent amendments to section 4658 and is consistent with the previously noted policy of encouraging employers to hire the disabled." (Id. at p. 8, 128 Cal.Rptr. 673, "547 P.2d 449.)
We are not convinced that either section 3202 or general principles of fairness demand that we reject formula A. Use of formula A in applicable circumstances has been the law for over 30 years. Certainly, continued use of the same formula does not amount to cutting benefits. And although there is a substantial difference between the compensation allowed for a permanent disability of 100 percent and permanent partial disability of 65 percent, it would be contrary to the express directive of section 4664, subdivision (a), to make the employer liable for that difference when the difference was not directly caused by the industrial injury.
It is true that section 3202 demands that we interpret the workers' compensation statutes liberally in favor of the employee. Indeed, in Davis's case a different interpretation would be around $350,000 more favorable to her. But as Fuentes stated, "the policy underlying section 3202 cannot supplant the intent of the Legislature as expressed in a particular statute." (Fuentes, supra, 16 Cal.3d at p. 8, 128 Cal.Rptr. 673, 547 P.2d 449.) It is important to remember that apportionment in the workers' compensation context is the process employed "`to fairly allocate the legal responsibility.'" (Fresno, supra, 84 Cal.App.4th at p. 1304, 101 Cal.Rptr.2d 569, quoting Ashley v. Workers' Comp. Appeals Bd., supra, 37 Cal.App.4th at p. 326, 43 Cal.Rptr.2d 589.) The Legislature has made it very clear that the employer is legally responsible only for the direct result of the industrial injury and is not legally responsible to the extent the overall disability is caused by other factors. (§§ 4663, subd. (c), 4664, subd. (a).) Under either formula B or formula C, the employer would pay more for the industrially-caused fraction of an apportionable permanent disability than it would pay for the same disability not subject to apportionment. This, in our view, would be *619 contrary to the intent expressed in section 4664.

F. Conclusion
In sum, we find no clear legislative intent to abandon the use of formula A as adopted by Fuentes 30 years ago. The plain language of section 4664 implies that when an employee's overall permanent disability is subject to apportionment for a preexisting disability the calculation of compensation is to be made by subtracting the preexisting percentage of permanent disability from the overall percentage of permanent disability, i.e., by applying formula A. Furthermore, the policy underlying Fuentes's selection of formula A continues to be an important public policy in this state and the effect of adopting any calculation other than formula A would be contrary to the overall intent of SB 899. We are not convinced, therefore, that simply by enacting SB 899 the Legislature intended to reject the reasoning and result of the Fuentes decision. Even assuming that Fuentes is no longer directly controlling, we conclude in light of all the foregoing that it is appropriate to continue to apply the Fuentes rule.

VII. Disposition
In case No. H029544 (Davis v. WCAB et al.), the order of the WCAB denying reconsideration is affirmed.
In case No. H029834 (Torres v. WCAB et al), the order of the WCAB denying reconsideration is affirmed.
All parties shall bear their own costs associated with petitioning this court.
WE CONCUR: MIHARA and DUFFY, JJ.

Appendix

Former Law
§ 4663 "In case of aggravation of any disease existing prior to a compensable injury, compensation shall be allowed only for the proportion of the disability due to the aggravation of such prior disease which is reasonably attributed to the injury."
§ 4750 "An employee who is suffering from a previous permanent disability or physical impairment and sustains permanent injury thereafter shall not receive from the employer compensation for the later injury in excess of the compensation allowed for such injury when considered by itself and not in conjunction with or in relation to the previous disability or impairment.
"The employer shall not be liable for compensation to such an employee for the combined disability, but only for that portion due to the later injury as though no prior disability or impairment had existed."
§ 4750.5 "An employee who has sustained a compensable injury and who subsequently sustains an unrelated noncompensable injury, shall not receive permanent disability indemnity for any permanent disability caused solely by the subsequent noncompensable injury."

As Amended by Sen. Bill 899
§ 4663 "(a) Apportionment of permanent disability shall be based on causation.
"(b) Any physician who prepares a report addressing the issue of permanent disability due to a claimed industrial injury shall in that report address the issue of causation of the permanent disability.
"(c) In order for a physician's report to be considered complete on the issue of permanent disability, it must include an apportionment determination. A physician shall make an apportionment determination *620 by finding what approximate percentage of the permanent disability was caused by the direct result of injury arising out of and occurring in the course of employment and what approximate percentage of the permanent disability was caused by other factors both before and subsequent to the industrial injury, including prior industrial injuries...."
§ 4664 "(a) The employer shall only be liable for the percentage of permanent disability directly caused by the injury arising out of and occurring in the course of employment.
"(b) If the applicant has received a prior award of permanent disability, it shall be conclusively presumed that the prior permanent disability exists at the time of any subsequent industrial injury. This presumption is a presumption affecting the burden of proof.
"(c)(1) The accumulation of all permanent disability awards issued with respect to any one region of the body in favor of one individual employee shall not exceed 100 percent over the employee's lifetime
NOTES
[1] The issue is presently before the Supreme Court in Brodie v. Workers' Comp. Appeals Bd., review granted Nov. 15, 2006, S146979 and Welcher v. Workers' Comp. Appeals Bd., review granted Nov. 15, 2006, S17030.
[2] The WCJ first subtracted the percentage of disability attributable to the preexisting disability and then reduced the number to reflect the portion of Torres's knee disability that was due to nonindustrial factors. The parties do not discuss the WCJ's method of accounting for the nonindustrial portion of the knee disability. Accordingly, we do not consider that aspect of the apportionment problem.
[3] Hereafter, all unspecified code references are to the Labor Code.
[4] Pertinent provisions of the former and current code sections are set forth side by side in the appendix.
[5] The parties refer to formula A as the "subtraction" method and formula C as the "dollar value" or "accumulation" method. We have not adopted the parties' nomenclature and, instead, refer to the calculations as they were named by Fuentes.
[6] Section 4664, subdivision (b) also states that the presumption is one "affecting the burden of proof," which seems to be inconsistent with a conclusive presumption. This inconsistency has led some to argue that the presumption is merely rebuttable. (See Kopping v. Workers' Comp. Appeals Bd. (2006) 142 Cal. App.4th 1099, 1115, 48 Cal.Rptr.3d 618.) Kopping rejected the argument and concluded that the presumption is, indeed, conclusive. (Ibid.)
[7] When the permanent disability resulting from an industrial injury includes disability resulting from an earlier injury or condition the disabilities are said to "overlap." (Newman v. Workers' Comp. Appeals Bd. (1984) 152 Cal.App.3d 219, 222, 199 Cal.Rptr. 422.) Apportionment is appropriate only to the extent of the overlap. Any disability not involved in the overlap must be rated and compensated separately. (Id. at pp. 222-223, 199 Cal.Rptr. 422.) The burden of proving overlap is part of the employer's overall burden of proving apportionment. (Kopping v. Workers' Comp. Appeals Bd., supra, 142 Cal.App.4th at p. 1115,48 Cal.Rptr.3d 618.)
[8] We have granted the request of amicus curiae County of Los Angeles to take judicial notice of the documents cited in this paragraph.
[9] Section 4751 provides in full: "If an employee who is permanently partially disabled receives a subsequent compensable injury resulting in additional permanent partial disability so that the degree of disability caused by the combination of both disabilities is greater than that which would have resulted from the subsequent injury alone, and the combined effect of the last injury and the previous disability or impairment is a permanent disability equal to 70 percent or more of total, he shall be paid in addition to the compensation due under this code for the permanent partial disability caused by the last injury compensation for the remainder of the combined permanent disability existing after the last injury as provided in this article; provided, that either (a) the previous disability or impairment affected a hand, an arm, a foot, a leg, or an eye, and the permanent disability resulting from the subsequent injury affects the opposite and corresponding member, and such latter permanent disability, when considered alone and without regard to, or adjustment for, the occupation or age of the employee, is equal to 5 percent or more of total, or (b) the permanent disability resulting from the subsequent injury, when considered alone and without regard to or adjustment for the occupation or the age of the employee, is equal to 35 percent or more of total."